## TREADWELL *v.* BROWN.

43 290
70 155

A valid lien as against a debtor who is a member of a partnership, may be acquired by attaching all his interest in the effects of the firm and summoning the other partners as trustees; and such lien may be preserved by notice to the parties concerned, and such other acts designed to give notoriety to the attachment as the nature of the property will admit, although possession can not be taken and the property removed, to the exclusion of the other partners.

Such lien is not acquired, so as to support a bill against the firm for an account, by merely summoning the other partners as trustees.

THIS is a bill in equity, by a creditor of James C. Brown, one of the defendants, against the members of a partnership, alleging a previous suit at law by this plaintiff against the said James, in which the partner, Edmund, was summoned as trustee; that the said James was defaulted in that suit, and that the plaintiff thereby became his judgment creditor; alleging, also, that the assets of this firm were more than sufficient to pay all the debts, and praying that an account may be taken and the share of the debtor, James, in the surplus, be ascertained and applied to the payment of the plaintiff's claim.

The answer denied the existence of any surplus as alleged, or that the plaintiff had acquired any lien by attachment or otherwise; and upon the bill and answer and proofs, the cause came on to be heard.

*J. W. Towle,* for the plaintiff.

*Goodall,* for the defendants.

BELLOWS, J. It may be regarded as settled in New-Hampshire, that the goods of a partnership can not be attached in a suit against one of its members, and removed from its possession. *Gibson* v. *Stearns,* 7 N. H. 352; *Morrison* v. *Blodgett,* 8 N. H. 238; *Page* v. *Carpenter,* 10 N. H. 77; *Newman* v. *Bean,* 21 N. H. 93; *Hill* v. *Wiggin,* 31 N. H. 292. But it has not been held that no lien whatever can be acquired by attachment; on the contrary, it seems to be the opinion of learned judges that such attachment may be made. In *Morrison* v. *Blodgett,* above cited, the suggestion is made, by Judge *Parker,* of such an attachment aided by proceedings in equity; and this suggestion is cited and approved in *Dow* v. *Sayward,* 12 N. H. 271. In *Dow* v. *Sayward,* 14 N. H. 1, it is distinctly held, by *Parker,* C. J., that the interest of each partner in the partnership, may be taken and sold on execution, although incapable of actual seizure and reduction into possession. In this case the property was in a line of stages, and this point was directly drawn in question, and is, therefore, authority. The court held that the property was not exempt from seizure and sale on execution, because it was of such a nature that it could not be reduced into possession; and it was likened, in this respect, to equities of redemption and other interests of that character. And it is held, that being liable to levy and sale, it is also subject to attachment; and this accords

with the Revised Statutes, ch. 184, sec. 1; which provides that whatever may be taken in execution, may be attached and held as security.

That the goods of a partnership might be seized and a moiety or share sold upon execution, for the debt of an individual partner, was a matter of familiar practice at an early date; although there was some conflict as to the character of the interest acquired by the purchaser at such sale. But that the interest of the individual partner in the company effects, was liable for his debts in some form, seems never to have been questioned; and it is clearly in accordance with the policy of the law, which is, to make all the debtor's estate subject to the payment of his debts.

The former practice was to seize the specific property and sell the debtor's share; but it having now been settled in this State, that the other partners can not be excluded from the possession of such property, and that it can not be diverted from the use for which it was held; the question arises, in what way shall such attachment or levy be made effectual? As the interest of the individual partner is but a share of the surplus remaining after adjusting the claims upon the partnership, it is quite clear, that until an account is taken and that surplus ascertained, no application of the debtor's interest can be made to his private debt, and therefore, the aid of a court of equity is necessary. In many cases such aid is given; and among them is the case where a creditor, having obtained judgment against his debtor, and having exhausted his remedy at law, seeks a discovery of assets, and the application of them, to the payment of his debt; as in *The Bay State Iron Company* v. *Goodall*, 39 N. H. 223. So when a creditor, by attachment, judgment, or execution, has established a specific lien upon property subject to execution, and seeks to remove a fraudulent conveyance or other obstruction to a levy or sale; as in *Tappan* v. *Evans*, 11 N. H. 311; *Dodge* v. *Griswold*, 8 N. H. 425; *Stone* v. *Anderson*, 26 N. H. 506. So in case of the assignment by one partner of all his interest in the partnership, a court of equity would doubtless lend its aid to bring the other partner to an account; and it would make no difference whether such assignment was absolute, or by way of pledge to secure a debt. If, then, the plaintiff, in the case before us, has acquired a specific lien upon the partnership property, he will, upon the principle stated, be entitled to the aid he seeks.

As a general proposition, it may be conceded, that to constitute a valid attachment of personal property, there must be an actual seizure, or its equivalent. But it is not necessary that the officer should actually touch every article, or any of them. It is sufficient if they be brought within his power and he do some act significant of his purpose to attach them; as by entering a house or store, and declaring that he attaches all the furniture or goods, and then proceeding to inventory them; or locking them up and taking the key, or placing his servant in charge of them. *Odiorne* v. *Colley*, 2 N. H. 66; *Huntington* v. *Blaisdell*, 2 N. H. 317. In the latter case, *Woodbury*, J., holds that the attachment of goods may be effected by taking such possession

as is required on the sale of them. With these views it has been held that the law which in general requires the removal of goods, or the visible change of possession, does not apply to things which, in their nature, are immovable; but all being done to give notice that the nature of the case will admit, the attachment will be valid even as to subsequent attaching creditors. And the same principle is applied to the sale of personal property, namely, that to be valid against creditors, such change of possession shall be had as the nature of the property, will admit, with a view to give notoriety to the sale, that others may not be misled. And this principle is applied to the sale of a ship at sea; goods on board a ship; logs in a boom; and property at a distance, and the like. In these cases due diligence should be used to get actual possession, or such as the nature of the case will admit. So in the case of attachments, it is held that a Town House, erected upon the land of the town, but belonging to the debtor, as personal property, was in its nature so far immovable as not to come within the rule requiring a removal. *Ashman* v. *Williams*, 8 Pick. 402. In that case *Wilde*, J., says, "Generally attachments of personal property are not valid against subsequent purchasers, or attaching creditors, unless the officer takes possesion of the property attached." So in *Merrill* v. *Sawyer*, 8 Pick. 397, it was held that going to the barn by an officer, and declaring that he attached the hay in it, and posting a notice to that effect upon the barn door, was a valid attachment. So in *Hemmenway* v. *White*, 14 Pick. 408, *Shaw*, C. J., held that the nature of the possession and custody which an officer is to keep, will depend upon the nature and position of the property, as ships, rafts, piles of lumber, masses of stone, or lighter and more portable goods; and he held that the attachment of hewn stone, though not removed, but placed in the care of the creditor whose place of business was within 50 or 60 rods, was good, even as against a subsequent attaching creditor without notice.

To constitute a valid attachment of goods, then, there should be such a seizure of them and subjection to the control of the officer, as the nature of the property will admit. And having once made a valid attachment, to preserve the lien thus acquired, as against subsequent attaching creditors without notice, the officer must retain such possession as the nature of the property is capable of. And this would be so, even if his purpose not to abandon the attachment was manifested by taking the receipt of a third person for the goods; as is implied in *Whitney* v. *Farwell*, 10 N. H. 9, and *Young* v. *Walker*, 12 N. H. 502; or by placing his servant in charge of the goods, but who went off and left them, as in *Sanderson* v. *Edmunds*, 16 Pick. 144. But it by no means follows that such possession must be retained to preserve the lien as against the debtor himself. If left with him after the attachment on his engagement to deliver it up on demand, whether for his accommodation, as in *Baldwin* v. *Jackson*, 12 Mass. 131, and *Train* v. *Willington*, 12 Mass. 495, or to save expense, it is quite clear, we think, that it would not be regarded as a dissolution of the attachment as regards the debtor. Nor would it, as regards subsequent attaching creditors, where the receiptor allowed

such property to go back into the hands of the debtor; provided such subsequent attaching creditor had notice of the prior attachment, and that it was still subsisting. This is settled by the cases of *Whitney* v. *Farwell*, 10 N. H. 9, and *Young* v. *Walker*, 13 N. H. 502; in which the general doctrine of *Dunklee* v. *Fales*, 5 N. H. 527, is considered and qualified. See, also, *Carpenter* v. *Cummings*, 40 N. H. 158.

A valid lien, then, having been once acquired by the attachment, it is not lost as respects the debtor, by the mere fact that the goods have been suffered to go back into his hands for his convenience, or the mutual convenience of himself and the officer. The question then, is, can such a lien be acquired by the attachment of the debtor's interest in the partnership, as against the debtor himself? Formerly, in England, and elsewhere, the effects of the partnership could be seized, and sold on execution; but whether the purchaser would hold them subject to the paramount claims of the partnership or not, was not clearly settled; although the tendency has been in the direction of holding that the purchaser would acquire only the debtor's interest; and that is his share of the surplus, after liquidating the partnership claims. But it was very generally held that the *corpus* of the partnership effects might be seized and sold on execution and delivered to the purchaser; although there has been of late some inclination in courts' of equity to restrain such sale until the interest of the debtor partner could be ascertained by taking an account.

In jurisdictions where the right to attach property upon mesne process is unknown, as is the case in England, and most of the States of this Union, the seizure and sale upon execution would be attended with comparatively little inconvenience, so far as respects the exclusion of the other partners; inasmuch as it would ordinarily be of short duration, and it would be for the interest of all concerned to avoid all unnecessary interference with the due progress of business. And this consideration of the mischiefs that would be likely to arise from the attachment of the partnership effects upon such process, against one of the partners, is a strong argument against the power to do it at all; and in favor of what must be regarded as the now established law of this State. The question, then, returns, how can such a lien be acquired as will entitle a creditor of one partner to relief in equity? In respect to the real estate of the partnership there would seem to be no difficulty; and the same may be said as to machinery, hay, grain unthrashed, and various other articles where by statute an attachment may be preserved by leaving a copy of the process and return in the town-clerk's office. And in respect to other attached property, we are inclined to adopt and recognize the doctrine of the cases cited, and to hold, with them, that a valid lien may be acquired by its attachment, although the other partners are not excluded from the possession. What shall be done to constitute such an attachment, must, as in other cases, depend upon the nature and situation of the property attached. It will be sufficient if all is done that the nature of the case will admit, in accordance with the requirements in

other cases. An attachment should be returned of all the debtor's interest in the property, which ought to be invoiced and described as in other cases (*Ela* v. *Shepard*, 32 N. H. 277); and such measures ought to be taken to give notoriety to the attachment as the circumstances will admit, including notice to the partners. This, with summoning the other partners as trustees on account of the interest of the debtor in the partnership effects, would, we think, establish a lien upon the debtor's interest that would entitle the creditor to relief in equity. It is true that inconvenience might arise in many instances from the impossibility of reaching by attachment all the effects of the partnership. And the same was felt, and is still felt, in other jurisdictions, under the other system of taking and removing the effects *in specie;* and yet it was allowed to be done, as seen in the well considered case of *Welsh* v. *Adams*, 3 Denio 125. Indeed, no mode has yet been devised or suggested, that is free from serious objections, as intimated in *Hill* v. *Wiggin*, 31 N. H. 292; but the policy of the law to subject such property to the payment of debts is clear and unquestionable; and there is nothing in the objections urged of a character so grave as to justify us in disregarding or overruling the previous decisions of our own courts.

It is now distinctly settled that only the debtor's interest in the surplus can be reached; that the *corpus* of the partnership property can not be taken and the other partner excluded from the possession, and the interest of the debtor sold; as in *Newman* v. *Bean*, 21 N. H. 93; and at the same time it is decided as in *Dow* v. *Sayward*, 14 N. H. 1, that the interest of each partner may be seized and sold upon execution; and it is provided by statute that whatever may be taken in execution, may be attached and held as security. There is then, nothing left for the courts but to make application of established legal principles to the cases of attachment as they arise, and determine whether or not, in the particular instance, a lien has been acquired against the debtor. In some form the interest of the debtor partner may be taken and sold, consequently it is liable to attachment. As it can not be removed from the possession of the other partners, it may well be treated as in its nature immovable, as in the cases cited. And it may well deserve the consideration of the Legislature, whether a provision for preserving such attachments, by leaving a copy in the town-clerk's office, as in case of real estate, or hay, grain, and the like, might not be useful. As the law now stands, however, there may be cases where an attachment of the whole of the partnership property might be effectually made, as when it consisted wholly of mills and machinery. In other cases there would be many difficulties to encounter; and the same may be said of any mode that can be suggested. But it is extremely material that creditors should have reasonable access to the large mass of property of their debtors which is now invested in these partnerships; and we think that by a proper and careful application of legal principles, aided perhaps by a little judicious legislation, such access can be secured, and the just rights of the other partners at the same time protected.

Among the questions that may arise will be the power of the other partners to dispose of any specific property so attached, in the regular course of the partnership business. Should it be conceded that the rights acquired by the attachment were subordinate to the legitimate purposes of the partnership, and that, consequently, the other partners might use or dispose of any portion of the effects for the proper purposes of the firm; it would by no means follow that the rights acquired by the attachment would be of no avail; for in case of any attempt to misapply the assets, a court of equity would interfere by injunction or otherwise to protect such creditor, and to enable him to reach all that he is entitled to reach; and that is, his debtor's share of the surplus.

Upon looking into the proceedings in this case, including the original writ in the suit at law and the return thereof, we find that no attachment was attempted to be made, except by summoning the other partner as trustee; and, upon the views we have taken, a lien has not been acquired so as to lay the foundation for this application. Nor has there been a judgment against the debtor, James, upon which the remedy at law has been exhausted. We are therefore of the opinion that the bill as it now stands can not be sustained, and unless a different case can be made, must be dismissed.